## UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF FLORIDA
## TAMPA DIVISION

**SAMMIE HALL,**

    **Plaintiff,**

**-VS-**                         **CASE NO.:**

**USAA FEDERAL SAVINGS BANK,**

    **Defendant.**

_____/

## COMPLAINT AND DEMAND FOR JURY TRIAL

1.    Plaintiff alleges violation of the Telephone Consumer Protection Act, 47 U.S.C. §227 *et seq*. ("TCPA") and the Florida Consumer Collection Practices Act, Fla. Stat. §559.55 *et seq*. ("FCCPA").

## INTRODUCTION

2.    The TCPA was enacted to prevent companies like USAA FEDERAL SAVINGS BANK, (hereinafter, "Defendant" or "USAA"), from invading American citizens' privacy and prevent abusive "robo-calls."

3.    "The TCPA is designed to protect individual consumers from receiving intrusive and unwanted telephone calls." *Mims v. Arrow Fin. Servs., LLC*, --US--, 132 S.Ct. 740, 745, 181 L.Ed.2d 881 (2012).

4.    "No one can deny the legitimacy of the state's goal: Preventing the phone (at home or in one's pocket) from frequently ringing with unwanted calls. Every call uses some of the phone owner's time and mental energy, both of which are precious. Most members of the public want to limit calls, especially cellphone calls, to family and acquaintances, and to get their

political information (not to mention their advertisements) [*6] in other ways." *Patriotic Veterans v. Zoeller*, No. 16-2059, 2017 U.S. App. LEXIS 47, at *5-6 (7th Cir. Jan 3, 2017).

5.      "Senator Hollings, the TCPA's sponsor, described these calls as 'the **\*1256** scourge of modern civilization, they wake us up in the morning; they interrupt our dinner at night; they force the sick and elderly out of bed; they hound us until we want to rip the telephone out of the wall.' 137 Cong. Rec. 30, 821 (1991). Senator Hollings presumably intended to give telephone subscribers another option: telling the autodialers to simply stop calling." *Osorio v. State Farm Bank, F.S.B.,* 746 F. 3d 1242 (11th Cir. 2014).

6.      According to the Federal Communications Commission (FCC), "Unwanted calls and texts are the number one complaint to the FCC. There are thousands of complaints to the FCC every month on both telemarketing and robocalls. The FCC received more than 215,000 TCPA complaints in 2014." https://www.fcc.gov/document/fact-sheet-consumer-protection-proposal.

## JURISDICTION AND VENUE

7.      Jurisdiction and venue for purposes of this action are appropriate and conferred by 28 U.S.C. § 1331, Federal Question Jurisdiction, as this action involves violations of the TCPA.

8.      Subject matter jurisdiction, federal question jurisdiction, for purposes of this action is appropriate and conferred by 28 U.S.C. § 1331, which provides that the district courts shall have original jurisdiction of all civil actions arising under the Constitution, laws, or treaties of the United States; and this action involves violations of 47 U.S.C. § 227(b)(1)(A)(iii). See *Mims v. Arrow Fin. Servs., LLC*, 132 S.Ct. 740, 748 (2012) and *Osorio v. State Farm Bank, F.S.B.*, 746 F.3d 1242, 1249 (11th Cir. 2014).

9.     The alleged violations described herein occurred in Pasco County, Florida. Accordingly, venue is appropriate with this Court under 28 U.S.C. §1391(b)(2), as it is the judicial district in which a substantial part of the events or omissions giving rise to this action occurred.

## FACTUAL ALLEGATIONS

10.     Plaintiff is a natural person, and citizen of the State of Florida, residing in Land O' Lakes, Pasco County, Florida.

11.     Plaintiff is the "called party."  See *Breslow v. Wells Fargo Bank, N.A.*, 755 F. 3d 1265 (11th Cir. 2014) and *Osorio v. State Farm Bank, F.S.B.*, 746 F.3d 1242 (11th Cir. 2014).

12.     Plaintiff is a "consumer" as defined in Florida Statute § 559.55(8).

13.     Defendant is a corporation which was formed in Texas with its principal place of business located at 9800 Fredericksburg Road, San Antonio, Texas 78288, and which conducts business in the State of Florida.

14.     The debt that is the subject matter of this complaint is a "consumer debt" as defined by Florida Statute § 559.55(6).

15.     Defendant is a "creditor" as defined in Florida Statute § 559.55(5).

16.     Plaintiff is the regular user and carrier of the cellular telephone number at issue, (813) *** - 1464, and was the called party and recipient of Defendant's hereinafter described calls/text messages.

17.     Defendant placed an exorbitant number of automated calls/text messages to Plaintiff's cellular telephone (813) *** - 1464 in an attempt to collect on an automobile loan.

18.     On several occasions over approximately the last year, Plaintiff instructed Defendant's agents to stop calling/texting his cellular telephone.

19.     Upon receipt of the calls from Defendant, Plaintiff's caller ID identified the calls were being initiated from, but not limited to, the following phone number(s): (800) 759-8722 and (800) 531-7013, and when those numbers are called, an automated message answers "Thank you for calling USAA."

20.     Upon information and belief, some or all of the calls the Defendant made to Plaintiff's cellular telephone number were made using an "automatic telephone dialing system" which has the capacity to store or produce telephone numbers to be called, using a random or sequential number generator (including but not limited to a predictive dialer) or an artificial or prerecorded voice; and to dial such numbers as specified by 47 U.S.C § 227(a)(1) (hereinafter "autodialer calls").

21.     Plaintiff will testify that he knew it was an autodialer because of the vast number of calls and text messages he received, and because when he answered a call from the Defendant, he would hear a two to three second pause before a representative would come on the line.

22.     Additionally, Plaintiff received a number of text messages often similar in content that leads him to believe the text messages were being sent from an automated system.

23.     Defendant attempted to collect a debt from the Plaintiff by this campaign of telephone calls.

24.     On or about January 16, 2019, Plaintiff answered a call from Defendant to his aforementioned cellular telephone number, held the line, was eventually connected to a live representative, and informed an agent/representative of Defendant that he was aware he was past due, he had a family emergency that caused him to fall behind, that he would be making a payment shortly to get caught up, and demanded that Defendant stop calling his aforementioned cellular telephone number.

25.     During the aforementioned phone conversation on or about January 16, 2019 with Defendant's agent/representative, Plaintiff unequivocally revoked any express consent Defendant may have otherwise believed it had for placement of telephone calls to Plaintiff's aforementioned cellular telephone number by the use of an automatic telephone dialing system or a pre-recorded message or artificial voice.

26.     Each subsequent call the Defendant made to the Plaintiff's aforementioned cellular telephone number was done so without the "express consent" of the Plaintiff.

27.     Each subsequent call the Defendant made to the Plaintiff's aforementioned cellular telephone number was knowing and willful.

28.     Additionally, on or about February 18, 2019, due to continued automated calls to his aforementioned cellular telephone number from the Defendant, Plaintiff answered another call from Defendant, held the line, was eventually connected to a live agent/representative of Defendant, and informed the agent/representative of Defendant that he had previously informed them not to call his cellular phone, and again demanded that Defendant cease placing calls to his aforementioned cellular telephone number.

29.     Despite actual knowledge of their wrongdoing, the Defendant continued the campaign of abuse, calling the Plaintiff despite the Plaintiff revoking any express consent the Defendant may have had to call his aforementioned cellular telephone number.

30.     On at least three (3) separate occasions, Plaintiff has either answered a call from Defendant or returned a call (or text message) to Defendant regarding his account, held the line to be connected to a live representative, and demanded that Defendant cease placing calls to his aforementioned cellular telephone number.

31.     Each of the Plaintiff's requests for the harassment to end was ignored.

32.    Defendant has placed approximately one hundred (100) actionable calls to Plaintiff's aforementioned cellular telephone number.

33.    Defendant intentionally harassed and abused Plaintiff on numerous occasions by often calling up to three (3) times during one day, and on back to back days, with such frequency as can reasonably be expected to harass.

34.    From each and every call placed without express consent by Defendant to Plaintiff's cell phone, Plaintiff suffered the injury of invasion of privacy and the intrusion upon his right of seclusion.

35.    From each and every call without express consent placed by Defendant to Plaintiff's cell phone, Plaintiff suffered the injury of the occupation of his cellular telephone line and cellular phone by unwelcome calls, making the phone unavailable for legitimate callers or outgoing calls while the phone was ringing from Defendant's calls.

36.    From each and every call placed without express consent by Defendant to Plaintiff's cell phone, Plaintiff suffered the injury of unnecessary expenditure of his time. For calls he answered, the time he spent on the call was unnecessary as he repeatedly asked for the calls to stop. Even for unanswered calls, Plaintiff had to waste time to unlock the phone and deal with missed call notifications and call logs that reflect the unwanted calls. This also impaired the usefulness of these features of Plaintiff's cellular phone, which are designed to inform the user of important missed communications

37.    Each and every call placed without express consent by Defendant to Plaintiff's cell phone was an injury in the form of a nuisance and annoyance to the Plaintiff. For calls that were answered, Plaintiff had to go through the unnecessary trouble of answering them. Even for unanswered calls, Plaintiff had to deal with missed call notifications and call logs that reflected

the unwanted calls. This also impaired the usefulness of these features of Plaintiff's cellular phone, which are designed to inform the user of important missed communications.

38.     Each and every call placed without express consent by Defendant to Plaintiff's cell phone resulted in the injury of unnecessary expenditure of Plaintiff's cell phone's battery power.

39.     Each and every call placed without express consent by Defendant to Plaintiff's cell phone where a voice message was left which occupied space in Plaintiff's phone and/or network.

40.     Each and every call placed without express consent by Defendant to Plaintiff's cell phone resulted in the injury of a trespass to Plaintiff's chattel, namely his cellular phone and his cellular phone services.

41.     As a result of the calls described above, Plaintiff suffered an invasion of privacy. Plaintiff was also affected in a personal and individualized way by stress and aggravation.

42.     Defendant has a corporate policy to use an automatic telephone dialing system or a pre-recorded or artificial voice to individuals just as they did to Plaintiff's cellular telephone in this case.

43.     Defendant has a corporate policy to use an automatic telephone dialing system or a pre-recorded or artificial voice, just as they did to the Plaintiff's cellular telephone in this case, with no way for the consumer, Plaintiff, or Defendant, to remove the number.

44.     Defendant's corporate policy is structured so as to continue to call individuals like Plaintiff, despite these individuals explaining to Defendant they do not wish to be called.

45.     Defendant has had numerous complaints against it from consumers across the country asking to not be called; however, Defendant continues to call these individuals.

46.     Defendant's corporate policy provided no means for Plaintiff or Defendant to have Plaintiff's number removed from Defendant call list.

47.     Defendant has a corporate policy to harass and abuse individuals despite actual knowledge the called parties do not wish to be called.

48.     Not one of Defendant's telephone calls placed to Plaintiff were for "emergency purposes" as specified in 47 U.S.C. § 227(b)(1)(A).

49.     Defendant willfully and/or knowingly violated the TCPA with respect to the Plaintiff.

## COUNT I
### (Violation of the TCPA)

50.     Plaintiff realleges and incorporates paragraphs one (1) through forty-nine (49) above as if fully set forth herein.

51.     Defendant willfully violated the TCPA with respect to Plaintiff, specifically for each of the auto-dialer calls made to Plaintiff's cellular telephone after Plaintiff notified Defendant that Plaintiff did not wish to receive any telephone communication from Defendant, and demanded for the calls to stop.

52.     Defendant repeatedly placed non-emergency telephone calls to Plaintiff's cellular telephone using an automatic telephone dialing system or prerecorded or artificial voice without Plaintiff's prior express consent in violation of federal law, including 47 U.S.C § 227(b)(1)(A)(iii).

**WHEREFORE**, Plaintiff, SAMMIE HALL, respectfully demands a trial by jury on all issues so triable and judgment against, USAA FEDERAL SAVINGS BANK, for statutory damages, treble damages, punitive damages, actual damages and any other such relief the court may deem just and proper.

## COUNT II
### (Violation of the FCCPA)

53.    Plaintiff realleges and incorporates paragraphs one (1) through forty-eight (48) above as if fully set forth herein.

54.    At all times relevant to this action Defendant is subject to and must abide by the law of Florida, including Florida Statute § 559.72.

55.    Defendant has violated Florida Statute § 559.72(7) by willfully communicating with the debtor or any member of his family with such frequency as can reasonably be expected to harass the debtor or his family.

56.    Defendant has violated Florida Statute § 559.72(7) by willfully engaging in conduct which can reasonably be expected to abuse or harass the debtor or any member of his family.

57.    Defendant's actions have directly and proximately resulted in Plaintiff's prior and continuous sustaining of damages as described by Florida Statute § 559.77.

**WHEREFORE,** Plaintiff, SAMMIE HALL, respectfully demands a trial by jury on all issues so triable and judgment against, USAA FEDERAL SAVINGS BANK, for statutory damages, punitive damages, actual damages, costs, interest, attorney fees, enjoinder from further violations of these parts and any other such relief the court may deem just and proper.

Respectfully Submitted,

*/s/ Shaughn C. Hill*
SHAUGHN C. HILL, ESQUIRE
Florida Bar No. 105998
MORGAN & MORGAN, TAMPA, P.A.
201 N. Franklin Street, 7th Floor
Tampa, FL 33602
Telephone:  (813) 223-5505
Facsimile:   (813) 223-5402

Email: SHill@ForThePeople.com
Secondary: ACaputo@ForThePeople.com

*Attorney for Plaintiff*